| | | |
|---|---|---|
| KELLY BRUNSTETTER<br>1704 Gladmar Ct<br>Finksburg, MD 21048 | *<br>*<br>*<br>* | IN THE<br><br>UNITED STATES |
| Plaintiff | *<br>* | DISTRICT COURT |
| v. | *<br>* | FOR THE DISTRICT |
| SENIOR LIFESTYLE<br>MANAGEMENT, L.L.C.<br>4730 Atrium Court<br>Owing Mills, MD 21117 | *<br>*<br>*<br>*<br>* | OF MARYLAND |
| Serve on: | *<br>* | |
| The Corporation Trust, Incorporated<br>2405 York Road; Suite 201<br>Lutherville Timonium Md 21093 | *<br>*<br>*<br>* | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT

**COMES NOW,** Kelly Brunstetter, by and through her attorneys, Paul V. Bennett, Esq. and Bennett Legal Services, Inc., and hereby sues Senior Lifestyle Management, L.L.C. (hereinafter "Senior Lifestyle"), Defendant, and states as follows:

## JURISDICTION AND VENUE

1. This court has jurisdiction pursuant to the Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. (hereinafter "Title VII").

2. That all the actions complained of herein took place in Maryland.

3. That at all times relevant hereto, Kelly Brunstetter, Plaintiff, was an employee of the Defendant in Maryland.

4. That at all times relevant hereto, Defendant Senior Lifestyle, a management corporation responsible for the staffing in over 130 senior living communities across United States,

1

including Atrium Village located in Owing Mills, Maryland, employed fifty (50) or more persons, and is thus an "employer" within the meaning of the Title VII.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

5. On January 6, 2021, Plaintiff submitted a Charge of Discrimination with the Maryland Commission of Human Rights against Defendant and cross-filed with the U.S. Equal Employment Opportunity Commission. Plaintiff received the Notice of Right to Sue from the EEOC Philadelphia Field Office on April 25, 2022. Therefore, Plaintiff has properly exhausted her administrative remedies and this complaint has been filed in a timely manner.

## FACTS COMMON TO ALL COUNTS

6. Plaintiff is a Caucasian, and female. Defendant was aware at all relevant times herein of Plaintiff's race and gender.

7. On or about February 11, 2013, Plaintiff began working at Senior Lifestyle Management, L.L.C. (Senior Lifestyle) at the Atrium Village as a Health & Wellness Director ("HWD"). From approximately 2015 to 2018, Plaintiff was also a corporate mentor and travelled to other communities training other HWDs. In fact, in 2015, Plaintiff was named Defendant's "Health & Wellness Director of the Year."

8. Plaintiff's job duties as a Health & Wellness Director included, but were not limited to, direct oversight of delivery of care to Assisted Living residents, management of labor costs, supplies and other line items in the Assisted Living budget, developments and/or monitoring documentation systems to ensure all regulatory timeframes for review of assessments and service plans were met, planning and scheduling staff training programs and in-services for the Assisted Living Staff, compliance with all state regulatory requirements, including

mandatory reporting to the State, and management/ coordination of the work of all nursing and other assisted living staff.

9. At all times relevant hereto, Plaintiff met or exceeded the reasonable performance expectations for her position as a Health & Wellness Director. Plaintiff received outstanding performance reviews, the highest possible level of performance, and was never placed on a performance improvement plan. Plaintiff was never written up for poor performance.

10. At all times relevant to the instant complaint, Reuben Rosenfeld (Caucasian, male), employed by Defendant as an Executive Director, served as Plaintiff's first-level supervisor.

11. Deborah Moore (Caucasian, female) was employed by Defendant as a Divisional Director of Health & Wellness, and served as Plaintiff's second-level supervisor from approximately 2018 to the end of Plaintiff's employment in 2020.

12. Heather Crumbaugh (Caucasian, female) was employed by Defendant as a Regional Director of Operations, Mid-Atlantic Region, at all times relevant to the instant complaint.

13. At all times relevant to the instant complaint, Erna Laza (Caucasian, female), was employed by Defendant as an Operations Specialist.

14. At all times relevant to the instant complaint, Denise Buckholtz, (Caucasian, female), was employed by Defendant as a Regional Human Resources Director.

15. On March 20, 2020, Defendant issued a "Grid Covid Policy" for community employees. This policy did not reference the use of Personal Protective Equipment ("PPE") and did not mention so called HWD reports.

16. From the onset of the COVID-19 pandemic in the Spring of 2020, Plaintiff was informally asked to oversee handling supplies of PPE with the Defendant, including isolation gown and masks, and prepare HWD weekly reports. Plaintiff was also initially tasked with promoting

and educating staff about Senior Lifestyle screening protocols, but it remained the responsibility of the director of each department to enforce the infection control protocols across the department's personnel.  By way of example, the director of the housekeeping department would be responsible for enforcing the infection protocols and disciplining the housekeeping personnel for any violations of those protocols.

17. In or about March/ April of 2020, during the midst of the Covid pandemic, and in the absence of any policy concerning PPE, Plaintiff received an email with the grid guidelines for so called HWD reports requiring her to submit them weekly. However, under the PPE section of the guidelines for the HWD reports there was nothing about duty to report PPE obtained from third parties.

18. From the onset of COVID-19 pandemic, Senior Lifestyle experienced PPE shortages within the internal chain of supply. To bridge the gap in supply, the Defendant's corporate office suggested Plaintiff take steps to obtain PPE from third parties.

19. Upon the initiative of Mr. Reuben Rosenfeld and Plaintiff, Atrium Village pursued other sources of PPE. One additional source of necessary PPE was the supply offered by the State of Maryland through local health departments. There was no inventory for PPE obtained via this channel.

20.  Due to tremendous PPE shortages and dire epidemiological conditions, Plaintiff was making every possible effort to secure adequate amount of PPE, including the sufficient number of gloves to protect the Defendant's personnel and seniors.

21. In approximately March/ April of 2020, there was a Covid outbreak in the Atrium Community.  Scott Haswell, Medical Director, who was directing how to handle Covid protocols and outbreaks in the communities, suggested to Plaintiff she reach out for

guidelines to the Army National Guard. During that time, Plaintiff was living in the Atrium Village due to her commitment to the resident's care and safety because Senior Lifestyle had no adequate staff to take care residents.

22. In approximately April/ May of 2020, the Army National Guard conducted a full audit of the Atrium Village and found that the community was far superior to other assisted living communities concerning Covid standards and protocols.

23. At all times relevant to the instant complaint, Plaintiff assured the Atrium community was in compliance with all state regulatory requirements, including mandatory reporting to the State.

24. On September 21, 2020, Plaintiff submitted to management a HWD report which confirmed the then current inventory of 100 pairs of gloves secured from Senior Lifestyle corporate office.

25. On or about September 22, 2020, Senior Lifestyle corporate office made a routine delivery of PPE, including masks and gloves.

26. On or about September 29, 2020, Plaintiff was working night shifts from 11:00 pm to 7:00 am because of the night nurse's resignation.

27. On or about September 29, 2020, a regional team made of Ms. Deborah Moore, Ms. Heather Crumbaugh, Ms. Erna Laza, and Ms. Denise Buckholt came to the Atrium Village unannounced and began their onsite visit and audit of the Atrium Village team. Ms. Moore, Ms. Crumbaugh, and Ms. Laza made some inappropriate comments to other team members including Mr. Rosenfeld about Plaintiff's availability during the visit stating Plaintiff should make herself available, during their visit to the community regardless of staffing schedules/scenarios.  In fact, Ms. Moore, Ms. Crumbaugh called Plaintiff while she was

resting and sleeping post night shift to ask if she would be reporting to the community during daytime hours the next day. When Plaintiff arrived at the community the next day, Ms. Moore was not at Atrium Village anymore and had returned to her home office.

28. On or about September 29, 2020, Plaintiff had a discussion with Ms. Erna Laza concerning PPE inventory and HWD weekly reports. Among other things, Plaintiff explained the method of producing the HWD report. At no time during this discussion did Plaintiff state that the HWD weekly reports were falsified in order to safeguard Atrium Village supply.

29. On or about October 8, 2020, without further discussions with the regional audit team, Mr. Reuben Rosenfeld and Ms. Heather Crumbaugh presented Plaintiff with a first Corrective Action Notice ("Notice") alleging that certain infection control protocols were not in place and Senior Lifestyle screening policy was not being followed. Plaintiff never had a discussion with her second level supervisor.

30. The above-mentioned Notice referenced an alleged incident accusing Plaintiff of falsifying the HWD weekly report dated September 21, 2020 and that she had admitted to it. The Notice also mentioned PPE was being inaccurately counted as secured.

31. The Notice was erroneously marked as "Third and Final Written Warning" even though Plaintiff had never before been written up for conduct. This was the first time Plaintiff was written up for any performance or conduct issues.

32. On or about October 8, 2020, Plaintiff refused to sign the above-mentioned Notice and submitted her rebuttal dated October 9, 2020. As a result, some of the false and baseless accusations were removed and Plaintiff received another version of the same Notice also dated October 8, 2020.

33. On or about October 13, 2020, Plaintiff refused to sign the revised Notice and submitted a

second rebuttal asking that to be provided with the Defendant's PPE policy.

34. Two days later, on October 15, 2020, Defendant provided the PPE policy.

35. Between October 9, 2020 and November 6, 2020, Plaintiff was harassed by numerous calls and emails from Deborah Moore, Heather Crumbaugh, and Erna Laza demanding information not covered by her job description to which she was obliged to submit numerous additional documents with the information sought. One such request involved the sale of the property, and thus was information Plaintiff had no access to, and even if she had the access to that information, it would have taken days to compile it. Furthermore, Plaintiff 's request for assistance in responding to these inquiries were repeatedly ignored.

36. Due to the increasingly hostile work environment and the stress caused by these false accusations and the demands for providing information unrelated to her job description Plaintiff gave her 30 days' notice of resignation on October 30, 2020.

37. Upon resignation, Plaintiff was deprived of her monetary equivalent for outstanding leave.

38. Plaintiff's fellow Directors, including but not limited to Robert Lewis (African-American, male), who, like Plaintiff, had Mr. Rosenfeld as a supervisor, were not mistreated, given unwarranted discipline and pushed to involutory resign.

**COUNT I**
**GENDER DISCRIMINATION**
**(Disparate Treatment)**
**Title VII of the Civil Rights Act of 1964**
**42 U.S.C. § 2000e, *et seq.***

39. Plaintiff hereby restates and incorporates paragraphs 1 through 38 of this Complaint as though fully set forth herein.

40. Plaintiff is a member of a protected class, female, at the time of the subject discriminatory acts.

41. Plaintiff was qualified and satisfactorily performing her duties as a Health & Wellness Director under the employ of the Defendant.

42. That Defendant carried out the aforementioned acts of discrimination against Plaintiff on the basis of her gender (female) - a protected class under Title VII. But for Plaintiff's gender (female), she would not have been given unwarranted discipline and held to a higher standard in her job performance, would not have been falsely accused of misconduct, and would not have been subjected to disciplinary actions.

43. That the aforementioned acts constitute unlawful practices pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq*.

44. That the effect of the practices complained of above were to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee because of her gender (female).

45. That similarly situated male employees such as Robert Lewis were not subjected to the same or similar adverse employment actions that Plaintiff endured, including, but not limited to, being given unwarranted discipline and held to a higher standard in the job performance, been falsely of misconduct pretext, and would not have been subjected to disciplinary actions That the discriminatory actions, as set forth above, have caused and will continue to cause Plaintiff to suffer loss of earning capacity, severe emotional distress, humiliation, mental anguish, and led her to incur attorney's fees and litigation costs.

46. That the intentional discriminatory actions of Defendant, as alleged above, were done with malice and/or with reckless indifference to Plaintiff's rights.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

## COUNT II
## RACE DISCRIMINATION
## (Disparate Treatment)
## Title VII of the Civil Rights Act of 1964
## 42 U.S.C. § 2000e, *et seq.*

47. Plaintiff hereby restates and incorporates paragraphs 1 through 38 of this Complaint as though fully set forth herein.

48. Plaintiff is a member of a protected class, Caucasian, at the time of the subject discriminatory acts.

49. Plaintiff was qualified and satisfactorily performing her duties as a Health & Wellness Director under the employ by the Defendant.

50. That Defendant carried out the aforementioned acts of discrimination against Plaintiff on the basis of her race (Caucasian) - a protected class under Title VII.

51. That the aforementioned acts constitute unlawful practices pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq*.

52. That the effect of the practices complained of above deprived Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee because of her race (Caucasian).

53. That similarly situated non-Caucasian employees such as Robert Lewis (African-American) outside the protected class, were not subjected to the same or similar adverse employment actions that Plaintiff endured, including, but not limited to, being given unwarranted discipline and held to a higher standard in the job performance. That the discriminatory actions, as set forth above, have caused and will continue to cause Plaintiff to suffer loss of earning capacity, severe emotional distress, humiliation, mental anguish, and incur attorney's fees and litigation costs.

54. That the intentional discriminatory actions of Defendant, as alleged above, were done with malice and/or with reckless indifference to Plaintiff's rights.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

## PRAYER FOR DAMAGES

WHEREFORE, for the foregoing reasons, Kelly Brunstetter, Plaintiff, demands judgment against Defendant, Senior Lifestyle as follows:

a. Compensatory damages in the amount of $300,000;

b. Prejudgment and post judgment interest;

c. Award attorney's fees and costs, including expert witness fees, as allowed by law;

d. Award past and future non-economic damages for all claims as allowed by law, in an amount to be determined at trial, including, but not limited to, lost earnings capacity, mental suffering, emotional distress, loss of enjoyment of life, humiliation, loss of reputation, and inconvenience;

e. And for such other and further relief as this Honorable Court deems just and equitable.

Respectfully submitted,

_____/s/_____
Paul V. Bennett, Esq., Federal Bar No. 10324
Bennett Legal Services, L.L.C.
5457 Twin Knolls Road, Suite 300
Columbia, Maryland 21045
Telephone: (410) 886-7457
Facsimile: (888) 292-2158
Email: pbennett@bennettlaw.net

*Attorney for Plaintiff*

| | | |
|---|---|---|
| KELLY BRUNSTETTER | * | IN THE |
| 1704 Gladmar Ct | * | |
| Finksburg, MD 21048 | * | UNITED STATES |
| | * | |
| Plaintiff | * | DISTRICT COURT |
| | * | |
| v. | * | FOR THE DISTRICT |
| | * | |
| SENIOR LIFESTYLE | * | OF MARYLAND |
| MANAGEMENT, L.L.C. | * | |
| 4730 Atrium Court | * | |
| Owing Mills, MD 21117 | * | |
| | * | |
| Serve on: | * | |
| | * | |
| Emmett F McGee, Esq. | * | |
| Jackson Lewis P.C. | * | |
| 2800 Quarry Lake Drive, Suite 200 | * | |
| Baltimore, Maryland 21209 | * | |
| | * | |
| Defendant. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## **DEMAND FOR JURY TRIAL**

Plaintiff, Kelly Brunstetter, hereby demands a trial by jury in the above referenced matter for all Counts triable by right thereof.

Respectfully submitted,

_____/s/_____
Paul V. Bennett, Esq., Federal Bar No. 10324
Bennett Legal Services, L.L.C.
5457 Twin Knolls Road, Suite 300
Columbia, Maryland 21045
Telephone: (410) 886-7457
Facsimile: (888) 292-2158
Email: pbennett@bennettlaw.net

*Attorney for Plaintiff*